Burks, J.,
delivered the opinion of the court.
The assignments of error in this case are based exclnsively on the instruction to the jury on the trial in the C0UI’t below. The foundation of the instruction rests on the assumption that the alley on which the defendant laid its track was a highway, one of the streets of the city of Richmond, subject to the municipal authorities of said city, and that the defendant was duly licensed by said authorities to construct its road over and through the said alley. It is not claimed that there was any implied dedication of this alley to the public use, deducible from acts in pais, parol declarations, user, and the like. If there was any dedication at all, it was an express dedication by the deed of the 16th of June, 1838, between Carrington and Gamble, the former acting for himself and also in behalf of the devisees of Richard Adams, deceased, their representatives and assigns, under whom the plaintiff' claims title.
The court did not err, as the learned counsel for the plaintiff in error seem to suppose, in not referring the question of dedication to the decision of the jury. It was the province of the court to determine that question, as it depended upon the construction of the deed. The true enquiry for this court is, whether there is any error in the construction adopted by the circuit court.
Intent is the vital principle of dedication. In a case where acts and declarations are relied upon to show such intent, to be effectual, they must be unmistakable in their purpose and decisive in their character; and in every case it must be unequivocally and satisfactorily proved. Harris' case, 20 Gratt. 833; Holdane v. The Trustees of the Village of Cold Spring, 21 New York R. 474, 477; Washburn on Easements, marg. pp. 133, 134; 2 Dillon on Mun. Corp. § 499, and notes. And this would seem to be the right guide to judicial interpreta *689 tion in such cases; for we know that the individual owners of property are not apt to transfer it to the community, or subject it to the public servitude, without compensation, and such donation is not to be readily inferred.
To ascertain the intent of the parties is said to be the fundamental rule in the construction of agreements; (Canal Co. v. Hill, 15 Wall. U. S. R. 94); and in such construction courts look to the language employed, the subject matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the cii’cumstances as they viewed them, and so to judge of the tneaning of the words and of the coiTect application of the language to the things described. Nash v. Towne, 5 Wall. U. S. R. 689, 699. See also Maryland v. Railroad Co., 22 Wall. U. S. R. 105; Moran v. Prather, 23 Id. 492, 501.
It appears by the recitals in the deed, which is the subject of construction, that at the time it was executed, the dividing line between Adams’ lot, known in the plan of the city as lot Ho. 339, now the property of the plaintiff, and the Gamble lot, which lay south of it, designated in said plan as lot 323, was the ancient course and channel of Shockoe creek, which had been changed by certain artificial works constructed by the said city, so that it was matter of doubt and difficulty to determine where the ancient channel of the creek was. The object of the deed, as indicated by the recitals, was two-fold: First, to fix permanently and with certainty the boundary between the two lots, “ for the purpose,” as expressed, “ of avoiding disputes and litigations respecting boundaries.” Second, to promote “ the convenience of all parties interested ” *690 in the lots. To accomplish this double purpose, the parties agreed as follows: “The parties to this indenture have this day agreed that the boundary between said described land of said Richard Adams, deceased, and said lot number three hundred and twenty-three (323), shall be a street thirty feet wide, extending from 17th street westwardly to the eastern boundary of lot number three hundred and thirty-nine (339), which street shall be parallel to D street, and distant therefrom one hundred feet; and it is agreed that said street shall be forever kept open as a highway for the benefit of the lands and lots on both sides thereof.”
The deed, after conveying to Gamble, on behalf of the devisees of Richard Adams, all the right, title and interest which the said Richard Adams, at the time of his death, had in and to all and every part and portion of the land and lot of ground lying south of said thirty-foot street, and to the said devisees, on behalf of Gamble, all the right, title, and interest which said Gamble has in and to all and every part of said land, lying on the south side of I) street, between Seventeenth street on the east, and lot Ro. 339 on the west and north of the said thirty-foot street, concludes with the following covenant, substantially the same as the agreement before recited: “ And the said parties do covenant and stipulate -with each other that said thirty-foot street shall forever remain open as a highway and common for the use of the persons who may be the owners of the lots or land bounded on either side of said street.”
It is upon the language of this covenant and the preceding one before recited, that the learned counsel for the defendant in error chiefly rely as establishing the alleged dedication to the public use of the strip of land concerning which the controversy in this case has arisen. The land is designated as a “street”—“a *691 thirty-foot street ”—and the agreement is, “ that said street shall forever he kept open as a highway.” This language, taken alone, might be a sufficient of a purpose to dedicate to the public use. . The term “ highway ” is a generic name for all kinds of public ways—ways common to all the people of the state having occasion to pass over them. Holt, Chief Justice, Queen v. Saintiff, 6 Mod. R. 255, 258. To constitute a highway, it must be one over which all the people of the state have a common and equal right to travel, and which they have a common, or at least a general, interest to keep unobstructed. People v. Jackson, 7 Mich. R. 432, 446.
But seeking the intent of the parties as manifested by the instrument, we are not, under the established rules of construction, to be tied down to the terms and expressions referred to. Especially are we not at liberty arbitrarily to break up the intimate companionship of words and lop one member of a sentence from another. The maxim is, noscitur a sociis. "We must consider all the language employed—the instrument as a whole and every part of it. The general intention to be collected from the whole context, and every part of a written instrument, is always to he preferred to the particular expression. “ Every deed,” observes Hobart, Chief Justice, “ ought to be construed according to the intention of the parties, and the intent ought to be adjudged of the several parts of a deed as a general issue out of the evidence, and ought to be picked out of every part, and not out of one word only;” and such a construction should be put upon particular words as will best answer and effectuate the apparent general intention. Ex antecedmtibus ei consequentibus optima fit interpreiatio. Addison on Contracts (2d Amer. ed.), top p. 845, marg. 846.
*692 The agreement of the parties is not merely that there “ shall be a street thirty feet wide ” and “ that said street shall be forever kept open as a highway,” but the purpose for which it is to be kept open is declared. It is called a highway, but it is expressly for “ the benefit of the lands and lots on both sides thereof.” While called a highway, it is not for the public accommodation, not for the public use, but, in express terms, “ for the use of the persons and parties who may be the owners of the lots or land bounded on either side of said street.” The common meaning of the term “ highway ” is explained and qualified hy the language used in connection with it. If, indeed, it was used by the parties to the deed in the sense of a puhlic way, then the attempted dedication was to a limited portion of the public, and such a partial dedication is simply void and will not operate in law as a dedication to the whole public. There may be a dedication of a way to the public for a limited use, but there cannot be a dedication to a limited part of the public. Poole v. Huskinson, 11 Meeson & Welsby, 827. But I do not regard any dedication, partial or otherwise, as intended. I think the language of the deed fairly construed manifests a purpose merely to adjust and fix with certainty the boundary between the two lots, and establish a common right of way to be-annexed as a permanent easement to the lots, and not for the accommodation of the public.
This construction appears the more reasonable, when we consider the situation of the property in dispute. It is not a thoroughfare, but what is denominated a cul-desac. It is an alley thirty feet in width, and only two hundred feet in length, with an entrance from Seventeenth street on the eastern side and no outlet on the western. It affords no accommodation to any persons except the owners of the lots bounded by it. To them it is of great convenience. It is of no advantage to the public, and could not be unless extended westwardly so as to connect *693 with some public.street in that direction. It is most unreasonable, therefore, to suppose that any dedication of a way to the public could have been intended. People v. Jackson, 7 Mich. R. 432, 448.
The conduct, too, of the parties, which may be looked to in a case.like this, throws much light on the subject, Railroad Company v. Trimble, 10 Wall. U. S. R. 367.
In 1846, the plaintiff, in conjunction with his brother, became the purchaser of one-half of the Adams lot, upon which they immediately erected a foundry. They found the thirty-foot alley, from its condition, wholly useless, and they filled it up and improved it at their own expense, so as to make it a fit way of ingress and egress to and from their foundry. They purchased the residue of the lot in 1853, and from the date of their purchases they had the continued use and enjoyment of the lot and the alley in the rear -without any objection from any quarter, and without molestation until the defendant laid the railroad track, which was the occasion of the present suit. In 1846, when the first purchase wTas made, the plaintiff and his brother, who were co-purchasers, put up a high gate, closing the entrance to the alley on Seventeenth street, without objection on the part of the owners of the Gamble lot or any other person, and this gate remained until removed some time in the winter of 1865-6. In the mean time and hitherto, so far as appears, the municipal authorities of the city of Eichmond have never in any way recognized the alley as a public street, or exercised any control over it in the way of grading, paving, lighting, police regulations, or user of any sort.
As it thus appears that no dedication to the public was intended, there could be, of course, no acceptance, without which a dedication is incomplete, and the common council of Eichmond, if it attempted to do so, could not confer a right where it had none.
*694 It follows, from what has been said, that the instruction given to the jury is, in my opinion, erroneous, and that the judgment of the circuit court should be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.
It appears that the defendant has purchased from one Myers a portion of the property bounded by the alley in question, and is therefore a tenant in common with the plaintiff of the way over it. As such tenant, it is entitled to use said alley as a way in common with its co-tenants, but without prejudice to their rights. "Whether it has the right to lay a railroad track at all on said alley and use it as such, is a question not presented by the instruction given in this case, and I express no opinion upon it.
Judgment reversed.